UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANN YAKLIN,

                        Plaintiff,

                                   CIVIL CASE NO. 06-14547

v.

COMERICA, INC.,                        HONORABLE PAUL V. GADOLA
                                                      U.S. DISTRICT COURT
                        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a pregnancy discrimination cause of action, brought pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000(e), *et seq*. Now before the Court is Defendant Comerica, Inc.'s ("Comerica") motion for summary judgment, filed on October 23, 2007. For the reasons stated below, the Court will grant Defendant's motion.

**I. Background**

Plaintiff Joann Yaklin ("Yaklin") began her employment with Manufactures National Corporation, a banking institution, in 1985 as a Branch Receptionist. In 1992, Comerica and Manufactures National Corporation merged into one company. The resulting company is known only as Comerica. At the time of the merger, Plaintiff was employed as a Branch Manager and held the title of Assistant Vice President.

As part of Plaintiff's duties, Plaintiff was responsible for providing training with respect to Comerica's Code of Business Conduct and Ethics for Employees ("Code of Ethics"). Plaintiff was familiar with the Code of Ethics because in addition to providing trading on the topic, she also received copies of it when she was hired and annually throughout her employment. The Code of

Ethics specifically stated, "Reversing service charges for self or family members is a conflict of interest and grounds for immediate dismissal." Code of Ethics, Def.'s Mot, Ex C. Plaintiff otherwise had the authority to reverse account fees, based upon her position as Branch Manager.

Plaintiff's disciplinary record with the company was spotless for nearly twenty years. All of that changed in April of 2005. During that time, suspicious activity occurred at Plaintiff's branch office, more specifically there were substantial sums of money missing. Comerica's fraud department investigated the situation, focusing not on Plaintiff, but another employee of the branch. Comerica subsequently learned that Plaintiff and the suspect employee were close friends. Accordingly, the fraud department reviewed the activity on Plaintiff's accounts, as per Comerica's standard procedure in such circumstances. It was at this time that the investigator noticed that Plaintiff had personally reversed two charges on a commercial checking account for a bowling league called "Party People Mixed" ("PPM"). Plaintiff was the treasurer for PPM, was an authorized signer on the checking account, was authorized to transact business with respect to the account, Plaintiff's home address was listed as the address of record for the account, and all statements for the PPM account were sent directly to Plaintiff's home. Plaintiff was ultimately terminated from employment in June 2005, according to Defendant, for reversing service fees on the PPM account in violation of the Code of Ethics.

Plaintiff disputes the reason for her termination. Plaintiff argues that in April of 2005, before the investigation began, Plaintiff informed her supervisor, Bruce Lyons that she was pregnant. Plaintiff also claims that she informed Latisha Easley that she was pregnant on April 25, 2005, during her interview with the investigator. Plaintiff makes no claim that she ever sought maternity leave in conjunction with her pregnancy. Following Plaintiff's termination, Plaintiff never expressed

2

any concern to anyone at Comerica that she was terminated or otherwise discriminated against because of her pregnancy. Plaintiff also failed to report any allegation of discrimination to management, under Comerica's workplace discrimination policy. Instead, Plaintiff filed a charge with the EEOC on March 20, 2006, alleging she was terminated due to her pregnancy. Plaintiff's complaint was dismissed on July 19, 2006 and she was issued a right to sue letter.

**II.     Legal Standard**

**A.     Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as to a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id*. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id*. at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced

by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), aff'd, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of*

4

*Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### B. Pregnancy Discrimination

The framework for establishing a claim of pregnancy discrimination was set forth in *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000):

> [A]a claim of discrimination on the basis of pregnancy "must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII." *Boyd* [*v. Harding Academy of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir.1996)]. Such a claim requires that the plaintiff first establish a prima facie case of unlawful discrimination by showing that 1) she was pregnant, 2) she was qualified for her job, 3) she was subjected to an adverse employment decision, and 4) there is a nexus between her pregnancy and the adverse employment decision. *See id.* In a termination case such as this one, a plaintiff meets the second prong by showing that she was performing "at a level which met [her] employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990). If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its actions. *Boyd*, 88 F.3d at 413 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the defendant fails to satisfy this burden, plaintiff prevails. If the defendant satisfies this burden, then the presumption of intentional discrimination is negated; the employee must then prove by a preponderance of the evidence that the defendant intentionally discriminated against her. She may do this by showing that the "nondiscriminatory" reasons the employer offered were not credible, but were merely a pretext for intentional discrimination. *See id.*; *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (stating that the factfinder's "disbelief of the reasons put forward by the defendant" may, "together with the elements of the prima facie case, suffice to show intentional discrimination").

*Cline*, 206 F.3d at 658.

Demonstrating that a defendant's reason was a pretext requires that a plaintiff prove that the reason for discharge (1) had no basis in fact, (2) was not the actual reason for her discharge, or (3) was insufficient to warrant her discharge. *Asmo v. Keane, Inc.*, 471 F.3d 588, 595 (6th Cir. 2006). "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the

5

reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515 (emphasis in original).

## III.     Analysis

In the present case, there is no dispute among the parties that Plaintiff has presented a prima facie case in support of her claim for discrimination. The Court need not belabor those facts. Therefore, the Court begins its analysis with the burden of production shifted to Defendant to demonstrate a "legitimate, nondiscriminatory reason" for the termination. *Boyd*, 88 F.3d at 413.

Defendant asserts that Plaintiff was fired because she personally reversed charges on the PPM account in violation of the Code of Ethics. After reviewing the available evidence, the Court finds the purported rationale for Plaintiff's termination both legitimate and nondiscriminatory. Plaintiff does not dispute that she was a signer on the PPM account or that she personally reversed charges on that account. All the available evidence indicates that the responsible individuals considered the evidence then available and determined that Plaintiff's reversal of the charges was in violation of the Code of Ethics, warranting Plaintiff's termination. Accordingly, the Court finds that "the presumption of intentional discrimination is negated," *Cline*, 206 F.3d at 658, and Plaintiff must demonstrate that "the 'nondiscriminatory' reasons the employer offered were not credible, but were merely a pretext for intentional discrimination." *Id.*

Plaintiff argues that the reason offered for her termination is merely a pretext because she did not, in fact, violate the Code of Ethics. The Code of Ethics stated: "Reversing service charges for self or family members is a conflict of interest and grounds for immediate dismissal." Plaintiff asserts that the Code only prevented her from reversing charges for her own personal account or a

6

personal account of one of her family members. Plaintiff insists that because she reversed charges on the PPM account, and not her own personal account, the dismissal based upon the Code violation had no basis in fact. She asserts that her termination occurred because she was pregnant. The Court disagrees.

Plaintiff's argument regarding the Code violation attempts to draw a distinction without a difference. The Code of Ethics stated nothing about personal or business accounts, it merely prohibited "reversing service charges for self or family members" because such an action "is a conflict of interest. . . ." It is true, the PPM account was not Plaintiff's own personal account, however, there is little doubt that it was her account for the purposes of the Code of Ethics. Plaintiff was the treasurer of PPM and admits she was an authorized signer on the Comerica account. Renee Gulliver, a Comerica human resources consultant, testified in her deposition that within Comerica the term "signer" is synonymous with "owner" when referring to the holder of an account. Furthermore, as an authorized signer, Plaintiff had full access to the account and had bank authority to conduct any type of account transaction. Additionally, Plaintiff's home address was listed as the service address for the account; the PPM account statements were sent directly to Plaintiff at her home. All of this indicates that although Plaintiff claims the PPM account was not her personal account, as an authorized signer, it was clearly a conflict of interest in violation of the Code of Ethics for her to personally reverse the charges on the PPM account. Therefore, Plaintiff has failed to demonstrate that the reason for her termination was false and that actual discrimination was the real reason for the termination. *See St. Mary's Honor Center*, 509 U.S. at 515.

Moreover, even assuming arguendo that the reversal of charges was not an actual violation

of the Code of Ethics, Plaintiff has failed to present any evidence to indicate that Defendant did not honestly believe the proffered reason for her discharge. *See Majewski v. Automatic Data Processing, Inc.*, 274, F.3d 1106, 1117 (6th Cir. 2001)( "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."). Nor has Plaintiff produced any evidence that her pregnancy actually motivated Comerica to terminate her employment. *See Gray v. Toshiba Am. Consumer. Prod.*, 263 F.3d 595, 601 (6th Cir. 2001). Finally, the Court notes that Plaintiff has not produced any evidence demonstrating that any non-pregnant individual, in a similar factual situation as Plaintiff, was treated any differently. *See id.* at 600. Indeed, Defendant has identified several employees that engaged in similar misconduct, and each of those employees was terminated. As a result, Plaintiff has failed to carry her burden of demonstrating that the reason for her termination was pretextual, *Cline*, 206 F.3d at 658, and summary judgment in favor of Defendant is appropriate.

**IV.    Conclusion**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry #24] is **GRANTED**.

**SO ORDERED.**

Dated:    Janaury 24, 2008                              s/Paul V. Gadola
                                                        HONORABLE PAUL V. GADOLA
                                                        UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on  January 24, 2008 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Karen L. Piper; Ralph J. Sirlin , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845